# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

| | |
|---|---|
| RANDAL W. SUTHERLIN,<br><br>**Plaintiff,**<br><br>vs.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>**Defendant.** | CAUSE NO. 1:13-cv-1603-SEB-DKL |

## REPORT AND RECOMMENDATION

Plaintiff Randal W. Sutherlin brings this suit for judicial review of the defendant Commissioner's decision to deny his applications for disability benefits under both the disability-insurance and supplemental-security-income programs of the Social Security Act. The assigned district judge referred this Cause to this magistrate judge for submission of proposed findings and recommended disposition under 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b)(1). *Order Referring Issues to Magistrate Judge* [doc. 10].

## Standards

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If

1

the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 905. A person will be determined to be disabled only if her impairments "are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. § 423(a)(3)(G).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further. At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the applicant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy. At the fourth step, if the applicant has the RFC to perform her past relevant work, then she is not

disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy. 42 U.S.C. § 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

**Background**

After Mr. Sutherlin's applications were denied on initial and reconsideration reviews, he requested and received a hearing before an administrative law judge ("ALJ"). Mr. Sutherlin appeared at the hearing with legal counsel (different counsel than represents him on this judicial review) and he, his mother, and a vocational expert testified. The ALJ issued a decision denying his claims.

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

Preliminarily, the ALJ found that Mr. Sutherlin met the insured status requirements for disability-insurance benefits through June 2010. At step one, the ALJ found that Mr. Sutherlin has not engaged in substantial gainful activity since October 25, 2005, his alleged onset date. At step two, he found that Mr. Sutherlin had the severe impairments of seizures, diabetes mellitus type I, and an unspecified cognitive disorder. At step three, the ALJ found that Mr. Sutherlin did not have an impairment or combination of impairments, severe and non-severe, that meets or medically equals any of the listing of impairments. He examined listings 9.00 (incorporating 11.14 and 11.04B), 11.02 and 12.02.

For steps four and five, the ALJ determined Mr. Sutherlin's RFC. He found that Mr. Sutherlin retained the capacity to perform work at the medium exertional level with additional limitations. In additional to certain postural and exertional limits, the ALJ found that Mr. Sutherlin was limited to work that (1) is goal-oriented rather than production-oriented; (2) requires understanding, remembering, and performing only simple work tasks; (3) requires only routine and repetitive tasks, *i.e.*, no more than frequent changes in core work duties on a weekly basis; and (4) does not require more performance of productive work tasks for more than an average of 96 to 100% of an eight-hour workday, not including typical breaks. (R. 14.)

At step four, the ALJ found that this RFC prevented Mr. Sutherlin's from performing his past relevant work. At step five, considering his RFC, age, education, and

6

transferability of skills, and relying on the testimony of the vocational expert, the ALJ found that there exists a significant number of jobs in the national economy that Mr. Sutherlin can perform and, therefore, he is not disabled.

The Appeals Council denied Mr. Sutherlin's request to review the ALJ's decision, rendering his decision the one that is reviewed.

## Discussion

Mr. Sutherlin raised four errors in the ALJ's decision.

**1. Listing 12.02 analysis.**  Mr. Sutherlin argues that the ALJ's step-three analysis — specifically, whether Mr. Sutherlin's combined disorientation to place and memory impairment satisfied Listing 12.02 — was erroneous because he "arbitrarily rejected the functional evaluations by three treating physicians that the claimant is not able to work." (*Plaintiff's Brief in Support of Complaint To Review Decision of Social Security Administration* [doc. 22] ("*Brief*") at 9.)  Mr. Sutherlin asserts that the ALJ:

> rejected Dr. Nace's determination of disability due to lack of cognitive capacity to receive and execute instructions and follow through on assigned tasks.  He rejected Dr. [G]uill's determination of disability.  He rejected Dr. Haskin's mental residual functional capacity assessment, although it documented that his memory impairment was sufficient to meet the requirements for Listing 12.02.  He could not go more than a few blocks from his home without getting lost.

(*Brief* at 9 (citations omitted).)  Mr. Sutherlin contends that the ALJ's rejection was arbitrary because he relied on his own layman's evaluation of the doctors' medical

7

opinions to find that they were inconsistent with the evidence and, thus, acted as his own medical expert and made a medical finding for which he was unqualified. (*Brief* at 9-10.)

As so stated, this argument appears indistinguishable from his second argument, discussed below, that the ALJ erred at step three also by not calling a medical expert to opine on the issue of whether Mr. Sutherlin's impairments meet or medically equal the Listings, particularly Listing 12.02. To the extent that the present argument is duplicative of that argument, it is discussed below. Under this heading, the Court addresses the argument that the ALJ arbitrarily rejected or ignored evidence.

Mr. Sutherlin includes under the present heading descriptions of a few authorities that he contends stand for the propositions that it is reversible error for an ALJ to fail to analyze a physician's report; selectively consider or discuss medical reports, especially of treating sources; ignore portions of medical reports that suggest a disability; fail to build an accurate and logical bridge from evidence to conclusion; and that discuss only evidence that supports a denial of benefits. (*Brief* at 10-12.) But Mr. Sutherlin develops no argument from these authorities; he fails to apply them to the ALJ's decision or the record evidence in order to define, explain, or support any errors. Likewise, he fails to address the specific criteria of Listing 12.02 that he, presumably, contends ignored evidence proves. The Court will not undertake the analysis for him. Thus, Mr. Sutherlin has forfeited any argument about ignored or selectively considered evidence in the ALJ's step-three analysis. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013); *Woystek v.*

*Colvin*, No. 1:12-cv-1816-JMS-MJD, *Entry Reviewing the Commissioner's Decision* [doc. 23], 2013 WL 4479034, *7-8 (S.D. Ind., Aug. 19, 2013); *Elliott v. Astrue*, No. 1:09-cv-653-SEB-DML, *Entry* [doc. 30], 2010 WL 3893801, *5 (S.D. Ind., Sept. 29, 2010).

In his reply, Plaintiff's counsel, in an all-too-common practice, attempts to put flesh on the bones of his statements. But it is for naught because arguments raised for the first time in reply are forfeited. *Stevens v. Colvin*, No. 1:13-cv-1725-WTL-DML, *Entry on Judicial Review* [doc. 21], 2014 WL 5704728, *4 n. 3 (S.D. Ind., Nov. 5, 2014). Counsel is well aware by now that he may not merely make conclusory statements in his opening briefs, cast some case cites and descriptions, and lie in wait to sandbag the Commissioner after she has made her arguments in response.

The Court further observes that, on a quick review, far from ignoring or arbitrarily rejecting any of the three physicians' opinions, the ALJ's decision shows that he discussed and evaluated each one. (R. 17-18, 20 (Dr. Nace); 18, 20 (Drs. Guill and Haskin).)

**2. Failure to call medical expert.**

> Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue. *See* 20 C.F.R. § 404.1526(b) ("Medical equivalence must be based on medical findings. . . . We will also consider the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence."); S.S.R. 96–6p at 3 ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."),

9

> reinstating S.S.R. 83–19; *see Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir.1989) (concluding that ALJ complied with requirement of Social Security Ruling 83–19 that he consider a consulting physician's opinion regarding medical equivalency).

*Barnett v. Barnhart*, 381 F.3d 664, 670-71 (7th Cir. 2004). Mr. Sutherlin argues that the ALJ erred by failing to call a psychologist on the issue of whether his mental impairments, singly or in combination, medically equaled a Listing at step three. He contends that the ALJ could not have relied on the expert opinions of the state-agency's physicians because, as he wrote in his decision, "these physicians did not have the benefit of reviewing the evidence submitted after the reconsideration decision or the hearing testimony . . . ." (R. 21.)

Mr. Sutherlin's argument is unpersuasive. Two state-agency psychologists completed Disability Determination and Transmittal forms providing their opinions that Mr. Sutherlin is not disabled, which includes an opinion that his impairments do not medically equal any listing. Such forms satisfy the requirement for expert medical opinion on the issue of medical equivalence. S.S.R. 96-6p; *see Staggs v. Astrue*, 781 F.Supp.2d 790, 795 (S.D. Ind. 2011). Although the ALJ wrote that the state-agency physicians had not reviewed the evidence submitted after the reconsideration decision, his statement was in the context determining Mr. Sutherlin's RFC, after he had already made his step-three Listings determination. Mr. Sutherlin merely points to the ALJ's statement but fails to show the relevance of any later-submitted evidence or medical opinion to the criteria of Listing 12.02 and the subject of medical equivalence. Neither

did Mr. Sutherlin's counsel supply, or argue the need for, expert medical opinion on the subject of medical equivalence at the hearing, although it was Mr. Sutherlin's burden to establish Listings satisfaction. The ALJ was, and the Court is, entitled to assume that, if Mr. Sutherlin had expert medical opinion, or even an argument, showing that medical equivalence exists, they would have been presented.

**3. Credibility.** Mr. Sutherlin makes conclusory and vague statements that the ALJ's credibility finding is erroneous. He states: "The ALJ's negative credibility determination must be reversed because it is contrary the [*sic*] evidence and contrary to Social Security Ruling 96-7p . . . ," (*Brief* at 16), and "The credibility determination is contrary to the evidence, because the ALJ ignored or misinterpreted the objective evidence cited above which proved the claimant was totally disabled due to his brain damage with impaired memory . . . ," (*id.*), and "The ALJ's erroneous credibility determination requires reversal of the denial decision for the additional reason that it is perfunctory," (*id.* at 17), and "The ALJ's failure to cite any evidence in support of his conclusory statements and his apparently intentional vagueness in the credibility determination prevents this Court from having a basis for determining why the ALJ found the claimant's statements to be not credible. The ALJ's refusal to disclose his reasoning requires reversal," (*id.*). None of these statements are developed or supported with explanation, citations to the ALJ's decision, or citations to the record. Mr. Sutherlin's argument is perfunctory and, therefore, forfeited.

**4. Step five.** Mr. Sutherlin states that "[t]he denial decision must be reversed because the ALJ's residual functional capacity assessment did not accurately describe the claimant's impairments. The ALJ impermissibly failed to account for the claimant's quite impaired memory. When the vocational expert was permitted to consider the impairments described in Dr. Haskins' mental residual functional capacity assessment, he testified the claimant could not sustain any jobs." (*Brief* at 18 (citations omitted).) It is clear, however, that the ALJ articulated his evaluation of the evidence of record, including Dr. Haskin's opinions, and articulated his findings regarding the severity of Mr. Sutherlin's impairments and their resulting functional limitations. Mr. Sutherlin's "argument" is merely that he disagrees with the ALJ's findings. He then leaves it to the Court to undertake a general review of the record to discover whether the ALJ erroneously evaluated the claimant's "quite impaired memory." It is an invitation the Court declines.

**Conclusion**

Because Plaintiff has not shown error by the ALJ, this magistrate judge recommends that the Commissioner's decision denying Plaintiff disability benefits be **AFFIRMED**.

**Notice regarding objections**

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. ▪ 636(b); Fed.

R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. ▪ 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date:** February 3, 2015

*[signature]*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.